DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

THOMAS A. COLTHURST (CABN 99493)
DANIEL PASTOR (CABN 297948)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6778
    FAX: (415) 436-7234
    daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 20-CR-0452 EMC |
| Plaintiff, | ) |
| v. | ) **UNITED STATES' MOTION TO REVOKE RELEASE ORDER AND TO EXTEND STAY OF RELEASE** |
| FRANCISCO RICARDO MIRANDA, | ) Date: December 28, 2020 |
| Defendant. | ) Judge: Hon. Edward J. Davila |

      PLEASE TAKE NOTICE that on December 28, 2020 at a time convenient for the Court, or as soon thereafter as possible, the United States, pursuant to 18 U.S.C. § 3145, will and hereby does appeal the magistrate judge's release order issued on December 28, 2020, and moves this Court for entry of an order revoking the magistrate court's release order. The United States further moves this Court to extend the stay of the magistrate judge's release order, which will expire on December 29, 2020 at 10:30 a.m., until such time as this motion can be heard.

      Francisco Ricardo Miranda is the leader of a Bay Area drug trafficking organization (the "Miranda DTO") and a Mexican citizen. Three of Miranda's co-conspirators in this case—Jesus Rojas-Vega, Gelacio Perez-Rojas, and Leonel Cisneros-Sosa—are believed to have fled to Mexico. Miranda

1

was intercepted on a court-authorized wiretap saying that, if he were caught, he would flee to Mexico. *See* Dkt. 13-1 at 3. Agents also intercepted a phone call between Miranda and his father discussing sending Miranda's children to live in Michoacán, Mexico where Miranda's family owns orchards.

Miranda told Pretrial Services that he has not had a job for the past 10 years. The wiretap evidence and agents' surveillance show that he is a full-time drug dealer. When Miranda was arrested, agents found large amounts of cash and fraudulent identification at his home. Miranda's stash house contained 30 pounds of methamphetamine, which was still drying, and a press used to stamp bricks of cocaine with symbols.

The Miranda DTO obtains cocaine and methamphetamine from Southern California-based suppliers and has ties to drug suppliers in Mexico. The DEA has been investigating the Miranda DTO since December 2019. The government submits that Miranda should be detained.  He is a continuing danger to the community and there is a significant risk that he will flee to avoid the significant sentence he is facing. The rebuttable presumption in favor of detention applies to this case, 18 U.S.C. § 3142(e)(3)(A), and has not been overcome.

## I.     STANDARD OF REVIEW

On appeal of a magistrate judge's release order, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).  The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

"The facts that the Court uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The burden of proof rests with the government prior to trial. *See United States v. Hir*, 517 F.3d 1081, 1096 (9th Cir. 2008). With respect to risk of flight, the government bears the burden of demonstrating by a preponderance of the evidence that no set of release conditions will mitigate the risk of non-appearance. *See United States v. Motamedi*, 767 F.2d 1403, 1406

(9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

## II.     DETENTION HEARING

The magistrate judge ordered Miranda released on a $50,000 unsecured bond with his wife as a custodian. The government believes that is insufficient given that Miranda's wife admitted the defendant has not had a job for ten years. She is presumably aware of how the defendant earns money given his prior state narcotics arrest and the large amounts of cash found at their home. Given that Miranda previously stated his intention to flee to Mexico if he were caught and that he has discussed sending his children to live in Mexico with his family there, his incentives to flee are considerable. In addition, his wife has no job and no income, whereas agents believe Miranda's family has significant assets in Mexico including the orchards that are discussed in intercepted calls.

## III.    MIRANDA IS A SERIOUS RISK OF FLIGHT AND A CONTINUING DANGER TO THE COMMUNITY

### A.     Miranda Stated His Intent to Flee to Mexico If Arrested. Miranda's Co-Conspirator Rojas Is Believed to Have Already Fled to Mexico.

Miranda faces a minimum of 10 years in prison for his role as the leader and organizer of a drug conspiracy to possess five or more kilograms of cocaine with intent to distribute. In a phone call intercepted through a court-authorized wiretap, Miranda said, "If they catch me . . . I will leave to the motherland." Dkt. 13-1 at 3.  Miranda's co-conspirator Rojas (who was arrested by the California Highway Patrol after five kilograms of cocaine were found in his vehicle), is believed to have already fled to Mexico. Rojas has been intercepted calling drug associates using a Mexico-based phone number. Agents believe two of Miranda's other co-conspirators, Gelacio Perez-Rojas and Leonel Cisneros-Sosa, have also fled to Mexico to escape arrest.

### B. Miranda Has Been Living Under An Assumed Identity and Using Fraudulent Identity Documents

Miranda has a California Driver's License bearing his photo and the name "Concepcion Amneris Aponte." The license lists an address in Delhi, California, south of the city of Merced.  However, Miranda resides in the Bay Area. When agents executed a search warrant on Miranda's home, they found a Social Security card (shown below) bearing the fake name listed on the driver's license.

3





**C. Miranda lacks legitimate employment tying him to the community and is a full-time drug dealer posing a continuing danger to the community.**

Miranda told Pretrial Services that he has not had a job for the past 10 years despite being an able-bodied 34-year-old man. His family's story that he has been working with a mechanic fixing and selling cars does not square with the information the government has obtained in the investigation of this

case over the past year. The DEA monitored communications over several telephones[1] used by Miranda during the months of February, March, April, June, and July 2020. Agents uncovered no evidence of legitimate employment during the interception periods.  When Miranda was processed after his arrest in this case, he told the agents that he did not have a job. He is a full-time drug dealer. During the search of his residence, as agents sought to arrest him, Miranda also attempted to destroy his phone by breaking it in half, presumably in an effort to prevent the government from obtaining his communications and contacts.  Miranda has been linked to several significant drug seizures, indicating the scale of his drug distribution business. Using court-authorized wiretaps, surveillance, and drug seizures, the DEA has documented Miranda's involvement in three cocaine transactions in April and June 2020 (see table below).

| DATE | DRUGS SEIZED | CIRCUMSTANCES | COMPLAINT (DKT. 1) PARAGRAPHS DESCRIBING SEIZURE |
|---|---|---|---|
| 4/1/2020 | 291 grams of cocaine | Co-defendant Soto arranged to return cocaine to Miranda that Miranda would provide to co-defendant Cisneros.  DEA seized the cocaine from hiding place. | Seizure described in ¶ 61. Relevant intercepted communications and surveillance described in ¶¶ 59-62. |
| 4/9/2020 | 4,985 grams of cocaine | Miranda arranged to have co-defendant Rojas pick up a shipment of approximately 5 kilograms of cocaine, which was discussed in several intercepted communications. The 5-kilogram shipment was seized by officers from the California Highway Patrol. | Seizure described in ¶¶ 23-24. Relevant intercepted communications and surveillance described in ¶¶ 18-25. |
| 6/14/2020 | 997 grams of cocaine | Miranda arranged shipment of 12 kilograms of cocaine, which was discussed in several intercepted communications. A portion of the shipment of cocaine was seized by Hayward police officers. | Seizure described in ¶¶ 47-48. Relevant intercepted communications and surveillance described in ¶¶ 26-50. |

---

[1] Miranda's phones had user subscriber information under different names.

5

When agents searched Miranda's home on November 17, 2020, they found a large amount of cash (shown below). The same day, when agents searched Miranda's stash house in Mountain View, they seized 30 pounds of methamphetamine that was still drying. At the stash house, agents also seized a press used to stamp symbols on bricks of cocaine. Location data obtained through a search warrant for Miranda's cell phone shows that Miranda frequented the stash house.



The preponderance of the evidence shows a risk of flight where, among other factors, the weight of the evidence alerts the defendant to the reasonable possibility of conviction. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Here, the evidence against Miranda, and the mandatory ten-year sentence he faces if convicted, make him a serious risk of flight. *See id.* at 994-95.[2]

Miranda is also a danger to the community by virtue of the means he has chosen to make a living. As one court has explained, the risk of continued drug trafficking in particular is a danger to the community:

---

[2] *See also United States v. Parodi*, No. CR 08-0083 PJH, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) ("[I]n cases with large sums of cash available to the defendant the court may draw the conclusion that the defendant has the means to abscond. A defendant's financial condition and the length of sentence he or she faces are of particular importance in assessing the risk of flight.").

> In its report accompanying the Comprehensive Crime Control Act of 1984, Senate Report No. 98-225, reprinted in 1984 U.S. Code Cong. & Ad. News, pp. 3182, et seq., the Senate Committee on the Judiciary explained at length the concept of pretrial detention as provided under § 3142(e). The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *Id.* at 3195. The Committee also emphasized that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" (Footnote omitted.) *Id.* at 3196. *See also United States v. Strong*, 775 F.2d 504, 506-07 (3d Cir. 1985) (Congress equated drug trafficking with danger to community).

*United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *see also United States v. Wolf,* No. CR 15-263-EJD, 2015 WL 4573039 (N.D. Cal. Jul. 29, 2015) ("Because this evidence demonstrated Defendant's continuing involvement with the distribution of drugs, the danger to the community he posed if released was established by clear and convincing evidence").

### D. Miranda Has An Active State Arrest Warrant For 2009 Drug Charges

Miranda also has an active state arrest warrant from Redwood City, California. In 2009, state authorities charged him with possession for sale of controlled substances and conspiracy to sell controlled substances. In August 2010, an immigration judge ordered him removed from the United States. In August 2011, federal authorities removed Miranda to Mexico. At some point thereafter, Miranda illegally reentered the U.S. and resumed his drug trafficking activities. Use and possession of fraudulent identity documents, unlawful entry into the United States, and prior failure to appear in state court are all factors that support detention based on risk of flight. *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015).

### IV. CONCLUSION

The government respectfully requests that the Court revoke the release order and detain Miranda as a serious risk of flight and a continuing danger to the community.

DATED: December 28, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

\_\_\_\_/s/_____
DANIEL PASTOR
Assistant United States Attorney